UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

UNITED STATES OF AMERICA )
)
VS. )                      CR No. 17-080 JJM
)
JONATHAN BRESLIN )

_____

SENTENCING MEMORANDUM

Jonathan Breslin comes before this Court at the low place in his life. While being in that low place is commonplace for defendants before this Court, uncommon is Mr. Breslin's clear understanding and acceptance of his situation. Attached is a letter from Mr. Breslin to the Court. Exhibit 1. Mr. Breslin's letter provides a far better description and more full insight into his state of mind than Counsel could ever provide in a third person context. The Court should recognize Mr. Breslin's sincerity and consider his statement when determining the appropriate sentence. Mr. Breslin requests the Court impose a prison sentence in the range of 70 to 87 months.

I.      Advisory Guideline Sentencing Range

The advisory guideline sentencing range calculated in the pre-sentence report does not accurately represent a reasonable sentence for Mr. Breslin. The reported range is 151 to 188 months of incarceration. PSR ¶ 82. This range is derived from U.S.S.G. § 2G2.2. That guideline assesses a base offense level of 22, adds 15 levels for various factors present in this case, and deducts 3 levels for Mr. Breslin's plea of guilty for a final offense level of 34. The upsetting nature of this crime notwithstanding, this advisory sentencing range significantly overstates the seriousness of Mr. Breslin's

1

conduct. Moreover, this guideline itself was not promulgated or developed by the Sentencing Commission in its envisioned characteristic institutional role, but rather created from congressional policy directives based on morality judgments. This guideline is therefore due less deference when the Court determines the appropriate sentence in this matter. *See Kimbrough v. United States*, 552 U.S. 85, 100-102 (2007).

### A. Child Pornography Guideline

The original sentencing guidelines included a section addressing the production, transportation, trafficking and receipt of child pornography. U.S.S.G. § 2G2.2 (1987). Simple possession of child pornography was not a federal crime. The guidelines, and the 1988 revision, set a base offense level for this conduct at 13 and included enhancements for a prepubescent subject (+2) and distribution (+5, or more if of high value). *See* U.S.S.G. § 2G2.2 (1987) & (1988).

In 1990 Congress criminalized possession of child pornography and set higher maximum penalties for certain child pornography crimes. The Commission, in response, created a guideline structure for possession crimes, as well as adjust its existing framework for trafficking crimes to account for the higher statutory penalties. The Commission created U.S.S.G. § 2G2.4 to cover the crimes of possession, transportation, and receipt of child pornography which included enhancements for the separate offenses and a cross reference to § 2G2.2 if the conduct was related to trafficking. *See* U.S.S.G. App. C, Amend 372 (1991). Other enhancements were also created for various aggravating circumstances. The Commission explained its actions to Congress in an August 7, 1991, letter:

> It is important for Congress to recognize that the Commission is now in a position to provide, to an extent unparalleled by previous sources, detailed data on actual sentencing practices under the guidelines - information that we hope Congress will consider in its decision on sentencing policy... The Commission's guidelines, taking into account proposed amendments we recently sent to the Congress for its review, continue to require substantially tougher penalties than typically were imposed under pre-guidelines practice. In fact, a number of judges had written the Commission to

express the view that the offense level for the least serious forms of conduct under § 2G2.2 was too severe and that the Commission had failed to consider mitigating factors that warranted a lower sentence.  Empirical data on non-distribution cases sentenced under § 2G2.2 during fiscal year 1990 suggest many judges share this view of sentence severity. Data indicates that 34 of 88 such cases were sentenced below the appropriate guideline range. This 38 percent below-guideline sentencing rate is more than two and one-half times the 14.4 percent downward departure rate for all guidelines in the same period. Moreover, there are indications that many prosecutors may share the judges' views, based on the fact that apparently only three such downward departure sentences have been appealed. 137 Cong. Rec. H6736-02.

The new guideline for simple possession of child pornography set the base offense level at 10 and included a 2 level enhancement if the subject was a prepubescent child.  *Id.*

In response to the proposed guidelines (Guideline Amendment 372), Senator Jesse Helms introduced an amendment into an appropriations bill which would direct the Commission to change the child pornography guidelines and increase sentences again. *See* Treasury, Postal Service, Executive Office of the President, and Independent Agencies Appropriations, Fiscal Year 1992, 137 Cong. Rec. S10356-01, S10363 (Amendment 780). Sen. Helms commented on the record:

> The Sentencing Commission recently, for some unbeknown reason, decided to reduce the sentence for these smut peddlers so low that most of these convicted smut peddlers and pedophiles will receive, at most, probation....  The amendment instructs the Sentencing Commission to increase the penalty for child porn offenses so that offenders will serve at least some time in jail. *Id.*

The appropriations bill ultimately passed without any debate on the amendment, but it is clear that the Helms amendment was simply a rejection of the Commission's reasoned empirical study of child pornography sentencing in favor of general moral judgments that pedophiles need consistently more severe sentences. This type of unsubstantiated increase in the guidelines is precisely what *Kimbrough* warns against.

Following Congress's desires, the Commission increased the offense levels in both §§ 2G2.2 & 2G2.4. Guideline Amendment 436 raised the base offense level for simple possession of child pornography to 13 and included for the first time an enhancement for the number of pornographic items (+2 levels if 10 or more items). U.S.S.G. App. C, Amend 436 (1992). This higher offense level was equal to the prior base offense level for trafficking child pornography. *Compare* U.S.S.G. § 2G2.4 (1992) *with* U.S.S.G. § 2G2.2 (1991). As stated, this increase did not correspond with any empirical study justifying the increase as necessary to achieve the sentencing goals of 18 U.S.C. § 3553(a).

In 1995, Congress again decided to increase penalties for child pornography crimes. Initially the aim was to direct the Commission to increase offense levels for trafficking and production crimes. Additionally, Congress was concerned that the expansion of the internet and home computers was making it easier to traffic child pornography. *See* U.S.S.C. Report to Congress, Sex Offenses Against Children, 25-27 (June, 1996). The final legislation, however, extended to all child pornography offenders, possessors as well as traffickers and producers. As a result, the Commission increased the base offense level for possession of child pornography to 15 and added a new 2 level enhancement for using a computer in connection with the possession. U.S.S.G. App. C, Amend 537 (1996).

In 2003, Congress passed the Protect Act which included additional directives to the Commission for changes to §§ 2G2.2 & 2G2.4. The Protect Act eliminated the possibility of most downward departures for child pornography defendants, and added two aggravating enhancements to § 2G2.4. *See* U.S.S.G. App. C, Amend. 649 (2003). First, a 4 level enhancement was included for possession of pictures which depicted sadistic or violent content. *Id.* Also, the structure for enhancements based on the number of pictures possessed was retooled. Instead of a blanket 2 level increase for 10 or more items, the enhancement was now based on individual images: +2 levels for 10-

150 images, +3 for 150-300, +4 for 300-600, and +5 for over 600. *Id.* The Court must note that Congress passed this legislation, directing these changes, without consulting the Sentencing Commission. *See* Skye Phillips, *Protect Downward Departures: Congress and the Executive's Intrusion Into Judicial Independence,* 12 J.L. & Pol'y 947, 983, n. 185, 986 (2004). In fact, Congress wrote the new guideline language itself rather than allowing the Commission to perform its own function.

In 2004, the Commission reworked the two child pornography guidelines. *See* U.S.S.G. App. C, Amend. 664 (2004). It merged the guidelines into the current § 2G2.2 which sets separate base offense levels for simple possession as opposed to trafficking and production. The Commission also, however, increased the base offense level, again, for possession cases from 15 to 18. The reason for the increased base level was not to support the statutory sentencing purposes per 18 U.S.C. § 3553(a), but merely to equate the guideline ranges with the mandatory minimum sentences put in place by the Protect Act.

Again, contradictory to the holding in *Kimbrough,* the Commission did not consider these detailed changes from its own perspective as the designated sentencing experts, but merely endorsed Congress's unstudied opinions. When the Commission creates sentencing guidelines without acting in its characteristic institutional role, the Court must evaluate the suggested guideline range closely. A guideline based on congressional emotion - "smut peddlers and pedophiles" - and not on study of the most effective ways to sentence offenders to reduce recidivism, is not a recommendation to which the Court should give much consideration. Congress created and tasked the Sentencing Commission to be the expert institution dealing with all sentencing issues. With regard to the guidelines covering the possession of child pornography, however, Congress did not allow the Commission to complete its mission.

B. The Computer Use Enhancement

The advisory range here includes a 2 level increase for Mr. Breslin's use of a computer in conjunction with his offense conduct. The Commission created this enhancement pursuant to 1995 legislation. As an enhancement, this assessment provided the potential for extra punishment if certain facts appeared in a case beyond the normal circumstances. The particular aggravating fact being the use of a computer. The initial purpose for the enhancement – to address an atypical factor - does not make sense now more than 23 years later. Child pornography cases today are far different. Computer use is not an aggravating fact. Computer use is the normal standard situation. Computers are involved in virtually every child pornography case whether it involves trafficking, production, receipt or possession. The court should wholly disregard this enhancement because the 1995 aggravating exception has become the 2019 rule.

C.  The Number of Images Enhancement

The advisory range here includes a 5 level enhancement for the number of images Mr. Breslin possessed. This enhancement alone raises the advisory range from 87 to 108 months up to the PSR suggested range of 151 to 188 months. The mere number of images does not serve as a valid justification under § 3553(a) for a 50% increase in a potential sentence.

As discussed above, sentences for child pornography possession had been originally influenced by the number of items possessed, not the number of images. An item in the early 1990's could be a magazine, a film, a video tape, a periodical, etc. *See* U.S.S.G § 2G2.4 (1992). Ten or more items resulted in a 2 point enhancement. That rule remained constant until the changes put in place by the Protect Act in 2003. A child pornography possession sentence is now influenced by the number of individual images possessed rather than each conduit being treated as a single item. An individual who had 5 VCR tapes (5 items) would not have been subject to any enhancement in the past,

but, since 2003, his tapes would convert into 375 images for sentencing[1] and a 4 level increase. This change came from congressional directives, not from any empirical study. It appears the change was an attempt to address culpability.

It should be plain to the Court now, however, that the enhancement for number of images has very little to do with culpability. Collecting images from the internet is not complicated, not time consuming, and amassing enough images to be subject to a sentencing enhancement now is far easier than it was to acquire 10 "items" of child pornography in 1992. The relative ease therefore presents an argument for a lessening of culpability, rather than any increase. Also, like the computer use enhancement, possession of more than 600 images has become the norm, the standard. As the typical circumstance in these cases, the number of images should not result in an enhancement to the guidelines assessment. The standard situation is well covered by the appropriate base offense level.

Further, no Commission study has ever equated the number of images or items to any credible measure of culpability, or linked the number of images with sentencing strategies to lessen recidivism or protect the public. Essentially, the number of images enhancement is an arbitrary assignment of culpability which provides no purposeful support for the objectives of sentencing under § 3553(a). Under § 3553(a), the Court must ask if 100 images of child pornography really establishes a lower level of culpability than does 1000 images or 10,000 images. Without more information concerning the hows and whys of the collection the Court should conclude that the number of images has little to do with culpability and should not give this enhancement significant consideration.

D. Content Enhancement

---

[1] The guideline notes state that movies and video clips are treated as 75 images each. *See* U.S.S.G. § 2G2.2, app. nt. 4(B)(ii).

The guideline range here includes enhancements of 6 offense levels for the content of the images Mr. Breslin possessed. He was assessed 2 extra levels for possessing images of prepubescent children, and 4 more levels for possessing images with sado-masochistic themes. It is very basic to say that pornographic images depicting prepubescent children is disturbing, and producing such images is without justification. Equally disturbing are such images which also include a degree of sado-masochism. The much harder question is how the possession of such pictures affects or defines Mr. Breslin's culpability beyond the base offense level. The mine-run child pornography case includes pictures of prepubescent children. The outlying case is one with pictures of post-pubescent children. Like the computer use enhancement, the exception has become the norm. Given this reality, the Court should not give great weight to this enhancement because it does not define Mr. Breslin's culpability at all in a way which is distinctly aggravating from the base offense.

E. Mr. Breslin's Guideline Calculations

As stated in the PSR, Mr. Breslin has total offense level of 34. PSR ¶¶ 34-48. That includes a base level of 22, +2 for computer use, +2 for prepubescent subjects, +2 for distribution, +4 for sado-masochistic themes, +5 for the number of images, and -3 for acceptance of responsibility. Under the current guidelines that renders a suggested sentencing range of 151 to 188 months of incarceration. The Court should also consider, however, calculations of Mr. Breslin's guideline range under the original sentencing guidelines; the lack of a crime for simple possession of child pornography in 1987 notwithstanding. Under that regime he would have a base offense level of 13, +2 for distribution, +2 for prepubescent subjects, and -3 for acceptance of responsibility. The resulting guideline range would be 15 to 21 months in custody (OL 14 in Category I). This the only guideline assessment based the Commission's action in conjunction with its statutory institutional role, as described in *Kimbrough* - past practice or study of sentencing data -  and therefore is due more weight than calculations per

the subsequent guidelines. The bottom end of the PSR sentencing range, 151 months, is 10x the original bottom end guideline of 15 months. It is important for the Court to note this dramatic increase in potential sentences per the guidelines, and to contrast it with the *constant* of Mr. Breslin's culpable behavior. Was his conduct really not particularly serious had he acted this way in 1990?

## II.    First Time Offender

Mr. Breslin has no contact with the criminal justice system beyond this incident. He showed extreme immaturity and very poor judgment by searching out these images and engaging in this behavior. Aside from this conduct Mr. Breslin has led a life that is inconsistent with a person dedicated to a criminal lifestyle. He was, in fact, a business owner and a productive member of the community.

When establishing the Federal Sentencing Guidelines, Congress mandated that the United States Sentencing Commission "insure that the guidelines reflect the general appropriateness of imposing a sentence other than imprisonment in cases in which the defendant is a first offender who has not been convicted of a crime of violence or an otherwise serious offense, . . ." 28 U.S.C. § 994(j). The Commission attempted to apply that direction to the guidelines in several ways. First, it established the criminal history gradations to differentiate defendants based on their past criminal behavior or lack thereof. *See* U.S.S.G. § 4 (Criminal History and Criminal Livelihood). Category I of the guidelines criminal history assessment covers first time offenders because they would have no prior criminal contacts. The Commission also established a departure ground for aberrant behavior (*see* U.S.S.G. § 5K2.20) and the safety-valve adjustment (*see* U.S.S.G. § 5C1.2) to address first offenders. These applications, however, do not necessarily fulfill Congress's intent in 28 U.S.C. § 994(j). For example, criminal history category I applies to first time offenders as well as defendants with minor criminal contacts or dated uncounted convictions. The Court must consider Congress's counsel

to impose non-jail sentences on first time offenders not convicted of crimes of violence or other serious felonies. 28 U.S.C. § 994(j).

Mr. Breslin realizes that his behavior is very serious and that he will not be receiving a non-jail sentence under these circumstances. That being said, Mr. Breslin requests the Court consider his prior good life outside of this conduct when determining the appropriate sentence.

### III.    Additional Punishment

Mr. Breslin will bear other significant punishments in addition to prison as a result of this conviction. He will be subject to a greater period of supervised release with more strict conditions. Normally a 20 year felony will carry a term of supervised release of up to 3 years. Mr. Breslin, however, will receive a minimum of 5 years with a maximum of lifetime supervision. He will be required to engage in sex offender treatment. He will be subjected to polygraph testing. He will be subject to searches by law enforcement with less than probable cause. His supervision will be intensive.

Additionally, Mr. Breslin will be declared and labeled a sex offender. He will be required to register with authorities where he lives, works, or attends school. Some jurisdictions will require his registration for the rest of his life. His housing will always be limited. His employment – if he can find work – will always be limited. His travel will always be limited. He will be a second class citizen.

### IV.    A Minimally Sufficient Sentence

The law directs the Court to impose a sentence which is the least restrictive means to effect the purposes of sentencing, including just punishment, deterrence, incapacitation, and rehabilitation. 18 U.S.C. § 3553(a) (the parsimony directive). He has never served time in prison before, but has been held in custody for 17 months waiting the resolution of this case. This time has given him the opportunity to begin seriously

reflecting upon his actions. He has started the process of rehabilitation by attending sex offender, mental health and substance abuse classes/treatment. Exhibit 2. A sentence of 70 to 87 months in prison will be a severe penalty, but also adequate time to engage in further treatment within the BOP. This requested range reflects the advisory sentencing range in the PSR minus the enhancements for computer use and number of images.[2] Again, these two factors are present in almost every child pornography case before this Court, and therefore that conduct is part of the base offense rather than deserving of any enhancement. A sentence in the range of 70 to 87 months will adequately promote the purposes of sentencing in this case under § 3553(a), while not being more severe than necessary.

V.      Conclusion

For all of these reasons Mr. Breslin requests the Court follow this recommendation and sentence him accordingly.

Respectfully submitted
Jonathan Breslin
By his attorney,


/s/ Kevin J. Fitzgerald, 5775
Assistant Federal Defender
10 Weybosset St., Ste. 300
Providence, RI 02903
(401) 528-4281
FAX 528-4285
kevin_fitzgerald@fd.org

---

[2] Mr. Breslin's guideline offense level would drop to 27 absent the 5 level enhancement for 600+ images and the 2 level enhancement for computer involvement. Mr. Breslin's advisory sentencing range would then be 70 to 87 months in prison given an offense level of 27 in criminal history category I.

CERTIFICATION

I hereby certify that a copy of this motion was delivered by electronic notification to John McAdams, Assistant United States Attorney, on January 9, 2019.

/s/ Kevin J. Fitzgerald